IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LUCIA C. GAROUTTE,                          3:15-cv-00169-BR

        Plaintiff,                          OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

        Defendant.


**SARA M. HERR-WALDROUP**
Russell & Hill, PLLC
1212 N. Washington Street, Suite 122
Spokane, WA 99201
(425) 212-9165

**NANCY J. MESEROW**
7540 SW 51st Avenue
Portland, OR 97219
(503) 560-6788

        Attorneys for Plaintiff


**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**JORDAN D. GODDARD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2733

        Attorneys for Defendant


**BROWN, Judge.**

        Plaintiff Lucia C. Garoutte seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's application

for Supplemental Security Income (SSI) under Title XVI of the

Social Security Act.  This Court has jurisdiction to review the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

        For the reasons that follow, the Court **AFFIRMS** the decision

of the Commissioner and **DISMISSES** this matter **with prejudice.**


                      **ADMINISTRATIVE HISTORY**

        Plaintiff filed an application for SSI on July 26, 2011, and

alleged a disability onset date as of the date of her

application.  Tr. 35, 151.[1]  Her application was denied initially

and on reconsideration.  An Administrative Law Judge (ALJ) held a

hearing on June 12, 2013.  Tr. 31.  At the hearing Plaintiff and

---

        [1] Citations to the official transcript of record filed by
the Commissioner on July 21, 2015, are referred to as "Tr.""

a vocational expert (VE) testified.  Plaintiff was represented by
an attorney.

On August 9, 2013, the ALJ issued an opinion in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 18-26.  On December 1, 2014, that decision
became the final decision of the Commissioner when the Appeals
Council denied Plaintiff's request for review.  Tr. 1-3.  *See*
*Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on March 19, 1970.  Tr. 36, 151.
Plaintiff was 43 years old at the time of the hearing.  Plaintiff
has an eleventh-grade education, but she did not receive a high-
school diploma or equivalency.  Tr. 36, 182.  Plaintiff has past
relevant work experience as a mail sorter, fast-food cook, child
monitor, and electronic assembler.  Tr. 25, 62-63.

Plaintiff alleges disability due to her prosthetic right
leg, bilateral carpal-tunnel syndrome, lower back pain,
depression, and obesity.  Tr. 181.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 25-31.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla of evidence, but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner

determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine

whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her July 26, 2011, alleged onset date. Tr. 20.

At Step Two the ALJ found Plaintiff has the severe impairments of obesity, "below knee amputation of the right leg with prosthesis (since childhood)," and "history of bilateral carpal tunnel syndrome status post release." Tr. 20-21. The ALJ found Plaintiff's impairments of back pain, migraines, knee pain, depression, and DeQuervarin's tenosynovitis of the right wrist to be nonsevere. Tr. 20-21.

At Step Three the ALJ concluded Plaintiff's medically

determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 21.

In his assessment of Plaintiff's RFC, the ALJ found Plaintiff can perform light work as defined in 20 C.F.R. § 416.967(b) and, specifically, that Plaintiff can lift 25 pounds occasionally and 10 pounds frequently; can stand and walk for four hours in an eight-hour work day; can occasionally climb stairs and ramps, but cannot climb ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can perform "occasional forceful gripping or grasping with the hands"; and can "perform frequent bilateral fingering and fine manipulations."  Tr. 21-24.

At Step Four the ALJ concluded Plaintiff is capable of performing her past relevant work as an electronic assembler and as a cashier.  Tr. 25.

The ALJ also made an alternative Step Five finding that Plaintiff is capable of performing other jobs existing in the national economy as a rental clerk, office helper, and electronic worker.  Tr. 25-26.  Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) concluded

Plaintiff's depression and De Quervain's tenosynovitis were not severe impairments at Step Two; (2) discredited Plaintiff's testimony without providing legally sufficient reasons for doing so; (3) discredited the opinion of Plaintiff's treating physician, Camille Pajarillo, M.D., without providing legally sufficient reasons for doing so; and (4) concluded Plaintiff is capable of performing past relevant work as well as other work available in the local and national economies based on VE testimony that conflicted with the Dictionary of Occupational Titles (DOT).

## I.   **Step Two**

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments that are expected to last for a continuous period of at least 12 months.  *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  See *also* 20 C.F.R. § 416.920(a)(4)(ii); *Keyser*, 648 F.3d at 724.  A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 416.921(a), (b).  Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, co-workers, and usual

9 - OPINION AND ORDER

work situations; and dealing with changes in a routine work

setting.  *Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not severe only if
> it is a slight abnormality which has such a minimal
> effect on the individual that it would not be expected
> to interfere with the individual's ability to work
> . . . .  [T]he severity regulation is to do no more
> than allow the Secretary to deny benefits summarily to
> those applicants with impairments of a minimal nature
> which could never prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).

When the Commissioner proceeds beyond Step Two, the

Commissioner's failure to include any medical condition at Step

Two is harmless if the ALJ considered that condition when

formulating the RFC and when reaching the disability

determination at Step Four or Five.  *See Lewis v. Astrue*, 498

F.3d 909, 911 (9th Cir. 2007).

The ALJ concluded Plaintiff's alleged depression was

nonsevere because Plaintiff declined antidepressant medication,

the medical evidence did not reflect Plaintiff's depression

caused more than mild limitations, and the record indicated

Plaintiff's "mood issues" were related to social factors and

environmental stress.  Tr. 21.  The ALJ also found Plaintiff's De

Quervain's tenosynovitis was not a severe impairment because the

record did not reflect it was expected to last for a period of at

least 12 months and it "appeared to resolve with a steroid

injection."  Tr. 21.  After a thorough review of the record, the

10 - OPINION AND ORDER

Court concludes the ALJ's findings were supported by substantial evidence.

There is little evidence in the record concerning Plaintiff's depression.  In fact, Plaintiff's medical records indicated that she either did not suffer from depression or her depression was under control.  Tr. 267, 342, 351.  Moreover, the administrative record does not reflect she was treated for depression.

In addition, there is not any evidence in the record that Plaintiff's De Quervain's tenosynovitis can be expected to last more than 12 months.  The only medical record regarding Plaintiff's De Quervain's tenosynovitis indicated on May 13, 2013, Plaintiff underwent a steroid injection to treat that condition and was instructed to follow up with Samuel Bartholomew, M.D., if symptoms persisted.  Tr. 346.  There is not any medical evidence in the record that Plaintiff followed up with Dr. Bartholomew or that Plaintiff continued to experience any symptoms of De Quervain's tenosynovitis.

Accordingly, on this record the Court concludes the ALJ did not err when he concluded Plaintiff's depression and De Quervarin's tenosynovitis were nonsevere conditions at Step Two.

**II.  Plaintiff's Testimony**

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom

testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  *See also Spelatz v. Astrue*, 321 F. App'x 689, 692 (9th Cir. 2009).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).  *See also Delgado v. Commissioner of Social Sec. Admin.*, 500 F. App'x 570, 570 (9th Cir. 2012).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the June 12, 2013, hearing, Plaintiff testified she cannot stand for more than 15-20 minutes at a time without severe back pain and cannot walk for more than "a couple blocks" at a time without leg pain.  Tr. 43.  Plaintiff stated surgeries have

"brought the feeling back in [her] hand," but that she still has
wrist pain and difficulty with grasping and opening jars.
Tr. 45-46.  Moreover, Plaintiff testified she recently suffered a
fractured thumb and that she had dropped items "a couple times"
as a result of that injury.  Tr. 46.  Plaintiff testified she
experiences migraines four times per month that typically last
"two or three days," but they can linger for up to a week.
Tr. 48.  Plaintiff noted, however, that the headaches were
secondary to her neck pain and could be prevented if she takes a
muscle relaxer before the headache begins.  Tr. 49.

Plaintiff testified she suffers from depression and had "for
years," but that she has declined medication to treat that
condition because friends and family members have had bad
experiences with such medication.  Tr. 50, 60.  Plaintiff stated
she experiences fatigue, loss of appetite, inability to
concentrate, and difficulty getting out of bed as a result of her
depression.  Tr. 51.  Plaintiff testified, however, that her
mother-in-law is responsible for the times that she suffers the
worst symptoms of depression.  Tr. 59.

In her Adult Function Report dated January 14, 2012,
Plaintiff reported her depression had been worsening and caused
her to experience sleep disturbances and to have difficulty
getting out of bed.  Tr. 204.  Plaintiff stated she cannot lift
more than 20 pounds, walk more than two blocks, or stand more

than 15-20 minutes.  Tr. 204-05.  Plaintiff stated she prepares
simple meals that do not require more than 15-20 minutes of
standing, helps care for her grandchildren, and cleans one or two
loads of laundry per week.  Tr. 206-08.  Plaintiff reported her
conditions affect her ability to lift, squat, bend, stand, walk,
kneel, climb stairs, complete tasks, use her hands, and get along
with others.  Tr. 210.  Plaintiff stated, however, that she does
not have any difficulty following instructions, can pay attention
for "however long it takes," and has "no problem" handling work-
related stress.  Tr. 211.

The ALJ discredited Plaintiff's testimony because her
activities of daily living were inconsistent with her reported
symptoms, Plaintiff's allegations were inconsistent with the
medical record, and Plaintiff's poor work history predating the
alleged onset date of disability suggested her difficulty
maintaining employment was not related to her medical
impairments.  Tr. 22-23.

After a thorough review of the record, the Court concludes
the ALJ provided clear and convincing reasons for rejecting
Plaintiff's testimony.  As the ALJ noted when he found
Plaintiff's activities of daily living were inconsistent with her
reported symptoms, Plaintiff's statements in January 2012 and
June 2013 that she could only walk for two blocks were
contradicted by her March 2012 report to Dr. Pajarillo that she

walks one-half mile every day.  Tr. 332.  Moreover, as noted,
contrary to Plaintiff's testimony that she has longstanding
depression, her medical records most often indicate Plaintiff did
not suffer from any depression or that her depression was under
control.  Tr. 267, 342, 351.  The ALJ also correctly found
Plaintiff has not maintained consistent employment in the past
and that she left such employment for reasons unrelated to
disability.  Tr. 36-40.

Accordingly, on this record the Court concludes the ALJ did
not err when he discredited Plaintiff's testimony because he
provided legally sufficient reasons for doing so.

## III. Dr. Pajarillo's Opinion

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes findings setting forth specific,
legitimate reasons for doing so that are supported by substantial
evidence in the record.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1232 (9th Cir. 2011).  When the medical opinion of
a treating physician is uncontroverted, however, the ALJ must
give "clear and convincing reasons" for rejecting it.  *Turner v.
Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010)(quoting
*Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)).  The
opinion of a treating physician is "given greater weight than the
opinions of other physicians."  *Kelly v. Astrue,* No. 10-36147,

15 - OPINION AND ORDER

2012 WL 767306, at *1 (9th Cir. 2012)(quoting *Smolen v. Chater,*
80 F.3d 1273, 1285 (9th Cir. 1996)).

A nonexamining physician is one who neither examines nor
treats the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th
Cir. 1995). *See also Garrison v. Colvin*, No. 12-CV-15103, 2014
WL 3397218, at *13 (9th Cir. 2014). "The opinion of a
nonexamining physician cannot by itself constitute substantial
evidence that justifies the rejection of the opinion of either an
examining physician or a treating physician." *Taylor,* 659 F.3d
at 1233 (quoting *Lester*, 81 F.3d at 831). When a nonexamining
physician's opinion contradicts an examining physician's opinion
and the ALJ gives greater weight to the nonexamining physician's
opinion, the ALJ must articulate her reasons for doing so with
specific and legitimate reasons supported by substantial
evidence. *See, e.g., Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,
1198 (9th Cir. 2008). A nonexamining physician's opinion can
constitute substantial evidence if it is supported by other
evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*,
169 F.3d 595, 600 (9th Cir. 1999). *See also Simpson v. Astrue*,
No. 10-cv-06399-BR, 2012 WL 1340113, at *5 (D. Or. Apr. 18,
2012).

When a physician's opinion is inconsistent with her own
treatment notes, the ALJ may properly discount that opinion.
*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ

also may discount a medical opinion that is inconsistent with other substantial evidence, *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004), and may reject a physician's opinion regarding a claimant's level of impairment if it is unreasonable in light of other evidence in the record. *Bayliss*, 427 F.3d at 1217. *See also Morgan*, 169 F.3d at 601.

On May 15, 2013, Dr. Pajarillo, Plaintiff's treating physician, completed a "Physical Residual Functional Capacity Questionnaire" in which she stated Plaintiff had been diagnosed with "[b]elow the knee amputation," depression, migraine headaches, obesity, and right thumb pain. Tr. 347. Dr. Pajarillo stated Plaintiff's symptoms include knee, hip, and lower-back pain; depression; fatigue; headaches; right thumb pain; and weak grip. Tr. 347. Dr. Pajarillo stated she was "unable to answer" whether Plaintiff was a malingerer and that emotional factors "possibly" contributed to the severity of Plaintiff's physical symptoms and limitations. Tr. 347. Dr. Pajarillo indicated Plaintiff was "[i]ncapable of even 'low stress' jobs" due to depression, could only walk two blocks at a time, could only stand 15-20 minutes at a time, and could sit for at least six hours and stand for less than two hours in an eight-hour workday. Tr. 348. Dr. Pajarillo reported Plaintiff "currently" has limitations with reaching, handling, and fingering. Tr. 350.

The ALJ gave only "some weight" to Dr. Pajarillo's opinion because the ALJ concluded Dr. Pajarillo's opinion was inconsistent with the medical record and relied on Plaintiff's subjective complaints.  Tr. 24.  Because Dr. Pajarillo's opinion was contradicted by the opinions of nonexamining physicians Richard Alley, M.D., and Neal Berner, M.D., the ALJ was required to provide specific and legitimate reasons for discrediting Dr. Pajarillo's opinion.  *See Ryan*, 528 F.3d at 1198.

The ALJ correctly concluded Dr. Pajarillo's opinion was inconsistent with the medical record, including Dr. Pajarillo's own treatment notes.  Contrary to Dr. Pajarillo's May 15, 2013, opinion that Plaintiff could not perform low-stress jobs due to depression, Dr. Pajarillo noted on May 8, 2013, (only one week earlier) that Plaintiff's depression was "controlled."  Tr. 351. On September 11, 2012, Dr. Pajarillo noted Plaintiff had "no depression[,] unusual stress[,] or anxiety."  Tr. 342. Similarly, contrary to Dr. Pajarillo's opinion that Plaintiff could walk no more than two blocks, Dr. Pajarillo noted on March 21, 2012, that Plaintiff walked one-half mile every day without any indication in the record that Plaintiff's walking ability deteriorated between March 2012 and May 2013.  Tr. 332. Moreover, the ALJ reasonably found Dr. Pajarillo's opinion was based on Plaintiff's discredited subjective testimony in that it was similar to Plaintiff's testimony but inconsistent with

previous medical findings.

Accordingly, on this record the Court concludes the ALJ did not err when he discredited Dr. Pajarillo's opinion because he provided legally sufficient reasons for doing so.

## IV.  **Steps Four and Five**

As noted, Plaintiff contends the ALJ erroneously relied on the VE's testimony in making his Step Four and Step Five findings because the VE's testimony deviated from the DOT.

When a VE's testimony deviates from the DOT, "the ALJ must first determine whether a conflict exists" and then "determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert" rather than the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).  Reasonable explanations for conflicts between the DOT and VE testimony include the reality that "[e]ach occupation [in the DOT] represents numerous jobs," VEs may have additional information about particular job requirements from other publications or from the VE's professional experience, and "[t]he DOT lists *maximum* requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-49, 200 WL 1898704, at *2-*3 (Dec. 4, 2000)(emphasis added). *See also Massachi*, 486 F.3d at 113 n.17.

In particular, Plaintiff contends the VE deviated from the

DOT when the VE testified Plaintiff could perform her past relevant work as a cashier even though that occupation requires "constant" handling and fingering which conflicts with the ALJ's assessment of Plaintiff's RFC to only perform "frequent" handling and fingering.  In addition, the VE testified Plaintiff could perform jobs at the light-work exertion level even though the ALJ determined Plaintiff was only capable of walking and standing four hours per day.

As to the VE's testimony that Plaintiff could perform her past relevant work as a cashier, Plaintiff contends the ALJ's limitation of Plaintiff to frequent handling and fine manipulations ruled out the cashier occupation because the DOT specifies that an individual must be able to engage in handling on a constant basis to perform the tasks required by that job. *See* DOT § 211.462-014.  Plaintiff is correct.  The VE did not explain this inconsistency between his testimony and the DOT. Accordingly, Plaintiff is correct that the ALJ erred when he relied on the VE's testimony to conclude that Plaintiff is not disabled at Step Four based on the finding that Plaintiff could work as a cashier.

The ALJ, nonetheless, also concluded based on the VE's testimony that Plaintiff could perform her past relevant work as an electronics assembler and, alternatively, could perform other work in the national economy including work as a rental clerk,

office helper, and electronic worker.  Tr. 25-26.  Each of these
jobs is categorized in the light-exertion category.  Tr. 25-26.
Plaintiff contends the ALJ erroneously relied on the VE's
testimony that Plaintiff could perform these jobs because work at
the light-exertion level requires the claimant to stand or to
walk for six hours in an eight-hour workday.  As noted, the ALJ
limited Plaintiff to standing or walking for four hours in an
eight-hour workday.  Plaintiff, however, is incorrect that the
classification of an occupation in the light-exertion category
necessarily implicates six hours of standing or walking in an
eight-hour workday.  The DOT considers three factors when
qualifying an occupation as "light work":

> (1) when it requires walking or standing to a
> significant degree; or (2) when it requires sitting
> most of the time but entails pushing and/or pulling of
> arm or leg controls; and/or (3) when the job requires
> working at a production rate pace entailing the
> constant pushing and/or pulling of materials even
> though the weight of those materials is negligible.

*Applegate v. Colvin*, No. 3:13-cv-02295-KI (D. Or. June 4,
2015)(quoting DOT § 001.061-010).  Accordingly, the VE's
testimony that Plaintiff could perform jobs classified as "light
work" within the DOT was not necessarily inconsistent with the
ALJ's finding that Plaintiff could not stand or walk for more
than four hours in an eight-hour workday.  Thus, because the VE's
testimony did not deviate from the DOT, the ALJ did not err at

Step Four or in his alternative Step Five finding.[2]

On this record, therefore, the Court concludes the ALJ did not err when he relied on the VE's testimony to support the ALJ's Step Four and alternative Step Five findings.


## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 11th day of April, 2016.


_____
ANNA J. BROWN
United States District Judge


_____

[2] In any event, the VE also testified Plaintiff could perform other work in the national economy that is classified within the sedentary-exertion category, including jobs as a "call-out operator," addresser, and sorter.  Tr. 68.  Any error in relying on the VE's testimony that Plaintiff could perform occupations classified within the light-exertion category, therefore, is harmless because the availability of sedentary work consistent with the ALJ's assessment of Plaintiff's RFC would render the ALJ's reliance on the VE's testimony regarding light work "'inconsequential to the nondisability determination.'"  *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)(quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

22 - OPINION AND ORDER